IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

GRANT F. SMITH, *PRO SE*         )

        )

        *Plaintiff,*    )

        )

vs.        )    **Case: 1:19−cv−02516**

        )    **Assigned To : Contreras, Rudolph**

        **Assign. Date : 8/20/2019**

Internal Revenue Service    )    **Description: FOIA/Privacy Act (I−DECK)**

1111 Constitution Avenue, NW

Washington, DC 20224    )

        )

        *Defendants*    )

        )

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1. This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. In this lawsuit, Plaintiff seeks injunctive relief to compel defendant Internal Revenue Service (the "Defendant") to immediately release records related to the ongoing, long term laundering of tax-exempt donations by American donors through charitable organizations to which the IRS has issued determination letters, into illegal Israeli settlements, thereby directly and indirectly engaging in ethnic cleansing, illegal land seizures, and other expeditions against a friendly nation in violation of 18 U.S. Code § 960 and other applicable statutes and treaties.

2. Plaintiff is bringing this action because, to date, Defendant has not issued responses on Plaintiff's requests within the statutorily-prescribed time limit nor disclosed any responsive records.

1

RECEIVED
AUG 2 0 2019
Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

## JURISDICTION AND VENUE

3. The Court has jurisdiction over this action pursuant to 5 U.S.C. § 552(a)(4)(B)

and 28 U.S.C. § 1331. Venue is proper in this district pursuant to 28 U.S.C. § 1391 (e).

## PARTIES

4. Plaintiff, Grant F. Smith, is a public interest researcher domiciled in the District of

Columbia and founder of the Institute for Research: Middle Eastern Policy, Inc. (IRmep).

Smith's FOIA, mandatory declassification review (MDR) and Interagency Security

Classification Appeals Panel (ISCAP) generated releases, research and analysis have been

published in *The Washington Report on Middle East Affairs*, *Antiwar.com*, *the Wall Street Journal*,

*the Washington Examiner*, *Corporate Crime Reporter*, *Mint Press News*, *LobeLog*, the *Bulletin of the*

*Atomic Scientists*, *The Nation Magazine*, *The Weekly Standard*, *Military.com*, *the Jewish Daily Forward*,

*Business Insider*, *the Jerusalem Post*, *Israel National News* and *Courthouse News Service*. They have

been carried on broadcast outlets such as C-SPAN, NPR, other public and commercial U.S.

radio stations, foreign broadcasts transmitted by VOA, as well as foreign news agencies like

the BBC, Radio France and RT.

5. Defendant IRS is an agency of the United States Government within the meaning

of 5 U.S.C. § 552(f)(1) and has possession and control over the requested records.

## STATEMENT OF FACTS

6. The IRS is publicly known to have grappled with how to address the transfer of

U.S. tax-exempt charitable funding into overseas activities that have no apparent legality,

charitable purpose, or social welfare benefit. The very large amounts involved with regards

to illegal Israeli settlements have generated mainstream news coverage, lawsuits, numerous

requests for clarity to the IRS, confrontations with IRS administrators on television and radio and other formal complaints:

7. In the 1982 lawsuit *Khalaf v. Regan* a group of individuals challenged the tax exempt status of organizations supporting Israeli settlement efforts in the West Bank.

8. In the year 2005 *USA Today* reported that $50 billion had been raised, much of it in the United States in tax-exempt charitable contributions, and transferred overseas to build illegal settlements in the Israeli-occupied West Bank. Illegal settlement building involves the forced displacement of indigenous populations and the seizure of their lands and other property in violation of U.S. law, international law and U.S. policy.

9. On January 11, 2010 IRS Commissioner Douglas Shulman was asked on National Public Radio what the IRS policy on settlements was in reference to the $50 billion of U.S. charitable contributions flowing into settlements.[1] Shulman dodged the question.

10. Eric Goldstein identified New York based charities as involved in funding illegal settlement activities and claimed that they should be discontinued in his 2015 report, "Can I Take a Tax-Deduction on My donation to Israeli Settlements in Palestine?"[2]

11, In 2016 the charitable organization J Street called on the U.S. Treasury for a review of tax exempt status of non-governmental organizations that "channeled millions" to support settlers. Details listed by J Street mentioned the funding was being used for "the demolition of Palestinian houses – and in some cases entire communities."[3]

12.     In the 2017 lawsuit *Abulhawa V. United States Department of The Treasury* a group

---

[1] http://www.irmep.org/mp3/01112010dr_show.mp3
[2] https://foreignpolicy.com/2015/01/29/illegal-tax-deduction-charity-israel-settlements-palestine-irs/
[3] https://www.timesofisrael.com/j-street-calls-for-tax-review-for-us-pro-settlement-organizations/

of plaintiffs sued the Treasury for injuries suffered over their expulsion by Israeli settlers

benefitting from tax exempt charitable support. The Court of Appeals acknowledged

Plaintiffs had suffered harm, but no clarity as to the legality of charitable funding was issued.

13.    In the 2/1/2018 settlement of the lawsuit *Z Street v. IRS*, the Department of

Justice stated that:

> "In email correspondence produced in discovery, a Treasury Department employee
>
> stationed in Israel asked the IRS in spring 2009, at the request of a State Department
>
> employee, whether organizations' tax-exempt status could be revoked for funding Israelis
>
> settlements in the West Bank. The Treasury Department employee asked whether such
>
> activity could be deemed illegal or in violation of established public policy based on
>
> executive branch policy as stated in a 2005 Congressional Research Service report that
>
> no U.S. assistance to Israel can be used in the occupied territories because the United
>
> States does not want to foster the appearance of endorsing Israel's annexation of the
>
> territories without negotiations. The Treasury Department employee further asked
>
> whether this would be enough to revoke the tax-exempt status of organizations that
>
> provide funds to 'Israeli occupied territories.'
>
> As reflected in email correspondence produced in discovery, a number of IRS employees
>
> evaluated the questions raised by the Treasury Department employee in an effort to
>
> respond to the inquiry. An IRS employee ultimately referred the Treasury Department
>
> employee to the IRS hotline for reporting violations of the Internal Revenue laws."

*14. On August 1, 2019 Plaintiff publicly asked on C-SPAN's Washington Journal*

*IRS National Taxpayer Advocate Nina Olson to explain official IRS policy toward*

*funds laundered through tax exempt charities into illegal settlements. Olson dodged and*

*did not respond substantively to the question.[4]*

15. In the present FOIA, Plaintiff consulted all private letter rulings, TAMs, the

Internal Revenue Manual IRM, but has been unable to find any definitive information about

IRS policy on U.S. IRS-recognized tax exempt organizations either formed to fund illegal

settlements or formed with another social welfare benefit that are now or in the past

involved in such activities, directly or indirectly.

16. The question of the official IRS position on illegal settlement money laundering

remains pressing and unresolved. The United Nations claims settlement expansion is setting

the stage for the annexation of the West Bank as average American taxpayers wonder

whether they are making up for a multi-billion dollar "tax gap" imposed upon them because

the IRS is not upholding applicable laws and regulations.

## PLAINTIFF'S CURRENT FOIA REQUESTS AND AGENCY RESPONSES

17. On March 5, 2019, Plaintiff submitted a FOIA request to Defendants seeking

disclosure of "IRS Policy and responses to inbound complaints about illegal settlement

funding with U.S. tax-exempt charitable contributions."

18. On March 27, 2019 Defendant issued a "final response" to Plaintiff's March 5

FOIA request which it numbered F19071-0036 claiming it did not "reasonably describe" the

---

[4] "IRS dodges questions on illegal settlements" C-SPAN's Washington Journal, July 30, 2019
https://www.c-span.org/video/?c4813214/irs-dodges-questions-illegal-settlements

records sought, or provide sufficient detail for the IRS to avoid "unreasonable burden upon the IRS."

19. On April 11, 2019, Plaintiff appealed the IRS decision to close the FOIA "without properly conducting a search and release of responsive records."

20. On June 13, 2019, the IRS Appeals Office again claimed that "A determination by the disclosure office that a request is deficient in any respect is not a denial of access. Therefore, under the Departmental regulations, you are not entitled to administratively appeal this response. "

21. Although Plaintiff did not, and does not, believe his FOIA F19071-0036 was deficient, after telephone consultation with the IRS FOIA Public Liaison, he filed another FOIA request for "TEGE records on IRS policy toward illegal settlement funding from U.S. nonprofit tax exempt organizations." Plaintiff stated it was related to and a refinement of F19071-0036.The IRS received Plaintiff's FOIA on July 1, 2019[5]. To date Defendant IRS has not responded to Plaintiff's request as required by FOIA and has not disclosed any responsive records.

22. Plaintiff requested fee waivers for all of the requests on the grounds that Plaintiff is a "representative of the news media" within the meaning of FOIA and that disclosure of the requested records is in the public interest because it is "likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." 5 U.S.C. §§ 552(a)(4)(A)(ii)(II); 552(a)(4)(A)(iii). Plaintiff did offer up to $50 for document reproduction.

---

[5] US Priority Mail 9405511899561461038557

23. Plaintiff has constructively exhausted administrative remedies on account of Defendants' failure to comply with the 20-day time limit for making a determination on Plaintiff's FOIA requests as required by FOIA.

## PREVIOUS TREASURY DEPARTMENT AND IRS FOIAS

24. Plaintiff does not expect the Department of Treasury in general or the IRS in particular will be responsive to this FOIA request absent the oversight of a district court. Plaintiff's past experience is that the Department of Treasury and IRS will unlawfully withhold releasable material or engage in claims which strain credulity in order to avoid releasing material that would publicly reveal the functions of government.

25. For example, on September 27, 2007 Plaintiff filed a FOIA to the Department of Treasury to obtain information about what actions were being taken to combat "U.S. charitable money laundering to the West Bank." The Department of Treasury forwarded the request to the Financial Crimes Enforcement Network. (Exhibit H). On December 10, 2007 the Financial Crimes Enforcement Network denied the FOIA asserting that the Bank Secrecy Act made all relevant information exempt from disclosure. (Exhibit I).

26 On December 4, 2007 Plaintiff filed a request with the Internal Revenue Service seeking information about why the IRS was allowing charitable funding to flow into illegal West Bank settlements. The IRS denied the request stating "Internal Revenue Service Code includes taxpayer privacy provisions enacted by the Congress to protect the privacy of returns and tax return information of all taxpayers. Therefore, I cannot comment on what action, if any, we may take regarding the information you provided." (Exhibit J)

27. On November 11, 2017 Plaintiff requested copies of the determination letter issued by the IRS and the original request filed on IRS Form 21024 with supporting documents by The Israel Project, a tax exempt charity that long functioned as a public relations front for the Israeli government in the and raised tens of millions of dollars in the U.S. Rather than properly respond with the documents, which law requires be released to any requester, the IRS responded that "We're unable to locate the documents you requested." (Exhibit K).

## CAUSES OF ACTION

Violation of the Freedom of Information Act for Improper

Withholding of Agency Records

1. Plaintiff repeats, re-alleges, and incorporates the foregoing paragraphs as if set forth in full.

2. Defendant has improperly withheld the requested records from Plaintiff by failing to comply with the statutory time limit for rendering a determination on Plaintiff's FOIA requests in violation of 5 U.S.C. § 552(a)(6)(A)(i) and Defendants' corresponding regulations.

3. Defendant's failure to make reasonable efforts to search for records responsive to Plaintiff's requests violates FOIA, 5 U.S.C. § 552(a)(3)(C), and Defendant's corresponding regulations.

4. Defendants' failure to promptly disclose records responsive to Plaintiff's requests violates FOIA, 5 U.S.C. § 552(a)(3)(A), and Defendants' corresponding regulations.

5. Defendant DOD's failure to grant Plaintiff's request for a waiver of search fees violates FOIA, 5 U.S.C. § 552(a)(4)(A)(ii)(II), (iii) and Defendant's corresponding regulations.

7. Plaintiff has exhausted all applicable administrative remedies.

8. Plaintiff is entitled to injunctive relief with respect to the prompt disclosure of the requested documents.

## **REQUEST FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court:

    A. Expedite its consideration of this action pursuant to 28 U.S.C. § 1657(a);

    B. Order Defendants immediately to conduct a thorough search for records responsive to Plaintiff's requests;

    C. Order Defendants immediately to process any responsive records for disclosure and produce such records to Plaintiff;

    D. Enjoin Defendants from charging Plaintiff search and review fees relating to the requests; nonexempt records responsive to Plaintiff's FOIA request.

    E. Award Plaintiff its costs incurred in this action; and

    F. Grant such other relief as the Court may deem just and proper.

Dated: August 20, 2019

Washington, DC

                                    Grant F. Smith
                                    IRmep
                                    P.O. Box 32041
                                    Washington, D.C. 20007
                                    202-342-7325

                                    info@IRmep.org

                                    For process service:
                                    Grant F. Smith c/o IRmep
                                    1100 H St. NW Suite 840
                                    Washington, D.C. 20005